We'll hear the next case of Donohue v. Ward. May it please the Court. My name is Matthew Weinick. I represent the Plaintiff Appellant Jennifer Donohue. Your Honors, defendants in this action acted in at least four affirmative ways, which increased the danger to Lt. Scott Donohue that he would be susceptible to the risks of suicide. First, defendants affirmatively adopted the weapons removal policy, which acts as a deterrent to police officers seeking mental health treatment. Second, defendants affirmatively adopted the restriction to residence policy. Third, defendants enforced the restriction to residence policy with respect to Lt. Donohue. And fourth, defendants punished Lt. Donohue for violating the restriction to home policy. These are all affirmative decisions. These are all decisions which place Lt. Donohue in a worse position than if the municipality had not taken the action. And we know this because if we remove these decisions from the equation, then the conditions change. If we remove the weapons removal policy from the equation, we remove a deterrence from Lt. Donohue seeking help. And in fact, Lt. Donohue told his wife that he did not want to seek mental health treatment because he was worried about the policies at the Hempstead Police Department. If we remove the restriction to residence policy, we also remove a factor leading to the crisis that Lt. Donohue suffered leading to his suicide. You're asking us to second guess these policies. I mean, is that really something for the courts to do? I'm not asking the court to second guess the policies. What I'm suggesting is that these policies increased a risk. As well as implementing these- You say that's true, but the next step is- Is to mitigate. They shouldn't have been imposed, is what you're saying. That's not what I'm suggesting, Your Honor. What I'm suggesting is that if you increase the danger, if a municipality increases the danger to its police officers, it should take mitigating steps. Mitigating steps which are widely accepted by leading police departments, including the New York Police Department. And it becomes a failure to take action argument as opposed to an affirmative step argument. I think it's a totality of the circumstances. And it's like in Pena, where the defendant officers were condoning the conditions that led to a drunk driving accident. Similarly here, the defendants are acting, affirmatively acting, by implementing policies. They're condoning their officers to restrain themselves in hiding their mental health issues. And in that way, they're also condoning all of these conditions which are fostering mental health issues amongst their officers, which are leading to these risks of suicide. So it's a two-step. Implement the policy to address a legitimate concern, but also implement the mitigating policy to reduce the risk that the policy is creating. In that respect, it's also like the Conrad case where the police might have had a legitimate purpose in seeking to arrest the suspect. But they still went about doing that in a way that could have been unlawful. Similarly here, the defendants may have had legitimate purposes in seeking to implement certain policies. But they needed to do them in a lawful manner. Let me ask you this. The second step of the state-created danger exception is that the government action has to be egregious, outrageous. What is there in the record to show that the failure to take these mitigating steps is egregious or outrageous or shocks the conscience? Thank you, Your Honor. So first of all, these defendants know that their officers will need mental health counseling. These defendants know that their officers will not seek mental health counseling. These defendants know that their officers will not seek mental health counseling because of the policies that they've implemented. And the defendants know that they can implement other policies which might mitigate those risks. In the briefing, we correlated the actions to sending firefighters into a fire without protective gear. You know your firefighters are going to be injured. I think any reasonable person would find that shocking. It's like withholding bulletproof vests from police officers. You know if you send your police officers out into the field without tools to protect themselves, you know they will be injured. In this day and age, it's absolutely shocking if a police department did withhold bulletproof vests. It's similarly at the point where it's shocking that a police department withholds life-saving tools for a mental health crisis in police departments, which is well-documented, pervasive, and widespread, which these defendants know about for their decades of service in the police department and the positions in which they serve.  Thank you, Your Honor. Thank you. Good morning. Richard Finkle for the municipal respondents and the individual respondents. I would just like to point out to the court that obviously this is a tragic case. Obviously, the municipal respondents are quite distressed that it happened. However, the law is clear. There's not a single police officer suicide case in the entire country that has ever been held to present a viable substantive due process claim. What the plaintiff is seeking here, what the appellant is seeking here, is a dangerous step to impose liability upon municipal police employers for things that they did not do or they did not anticipate. That they failed to take some prophylactic measure that would have somehow saved Lieutenant Donahue's life. The weapons policy that they adopted, according to the complaint, that whole thing seems to me to be a typical red herring. Obviously, the weapons removal policy is necessary if a police officer reports mental health problems. You don't want that police officer to be in possession, excuse me, to be in possession of a service revolver that he may use on himself or some others. And the second step that flows from that is the allegation as well. That might have had a legitimate purpose, but you failed to adopt policies to address the mental health situations that might arise from those. That's your typical passive inaction. The words that this court and the Supreme Court have used is, we don't want to turn the Constitution into a font of tort law. That's a negligence claim, if anything. So, Pena, which was referenced, is distinguishable. In that case, the police supervisors encouraged their officers in the precinct to drink and drive while on duty and assured them that they would not be disciplined for that. There was a consequence of that that resulted in pedestrian deaths. Again, that was not a suicide case, but that was shocking and egregious misconduct on the part of those supervisors. In Conrad, there was a custodial situation. Judge Chin, that was your case. You found that those facts presented a custodial situation that's absent here. There were also the egregious facts of the team. Those claims were against NBC, too, not the police officers. Correct. Or the police department. Correct. There are no cases that I'm aware of where a municipal employer, as I said before, has been held responsible under a substantive due process theory for a suicide. I can think of maybe one hypothetical, egregious scenario where they might be, and that would be where the supervisors had knowledge of a distressed officer who had exhibited prolonged signs of suicidal tendencies, maybe expressed that to the supervisors, said to the supervisor, I can't take it anymore, I'm going to kill myself, for some reason I didn't have a weapon, maybe the supervisor says, here, use this. I mean, I don't mean to undermine the seriousness of the case, but that would be a circumstance where maybe that's affirmative egregious misconduct. That's not present here. Thank you. We'll hear the rebuttal. Thank you, Your Honor. I would just note this is the third time that a police suicide case has reached the Second Circuit. This case is unlike the other cases in that, in the other cases, the allegation was really that there was a failure to train the police officers. That's not what we're alleging in this case. In this case, we're alleging there were affirmative policy decisions, which increased the danger that police officers would hide their mental health issues and that police departments have a duty when creating that risk to mitigate the risk as well. And I think that this being the third time that such a case has reached this court undermines the importance of making a point that police departments have to take some level of mitigation in reducing the risks that they create by condoning environments where a mental health crisis is permitted to evolve and reach a stage of suicide. Thank you, Your Honors. Thank you. One reserved decision.